```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                    CASE NO. 08-60332-CR-COHN
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5                  Plaintiff,        March 27, 2009

 6         vs.

 7   NOEL BERES,

 8                  Defendant.        Pages 1 - 20

 9   -----------------------------------------------------------

10

11                      SENTENCING HEARING
                 BEFORE THE HONORABLE JAMES I. COHN
12                 UNITED STATES DISTRICT JUDGE

13
     APPEARANCES:
14

15   FOR THE GOVERNMENT:    MATTHEW EBERT, ESQUIRE

16

17

18   FOR THE DEFENDANT:    PHILIP HOROWITZ, ESQUIRE

19

20

21

22   REPORTED BY:         TAMMY NESTOR, RPR
                          Official Court Reporter
23                        299 E. Broward Boulevard
                          Room 203
24                        Fort Lauderdale, Florida 33301
                          (954) 769-5496
25
```

```
 1              THE COURT:  The matter before the Court is the

 2   United States of America versus Noel Beres, case

 3   No. 08-60332-CR.  Mr. Beres is present represented by Phil

 4   Horowitz.  The government is represented by Department of

 5   Justice trial attorney Matthew Ebert.

 6              Gentlemen, you all can be seated.  On December 9,

 7   2008, Mr. Beres entered plea of guilty to one count

 8   information that charged conspiracy to commit mail fraud in

 9   violation of 18 United States Code, Section 371.

10              Upon acceptance of Mr. Beres's plea, the Court

11   adjudged him guilty, ordered a presentence investigation

12   report, and deferred sentence until today's date.  Have

13   counsel for the respective parties received a copy of the

14   presentence report, Mr. Ebert.

15              MR. EBERT:  The government has, Your Honor.

16              THE COURT:  Mr. Horowitz?

17              MR. HOROWITZ:  Yes, Your Honor, as well as the

18   revised report.

19              THE COURT:  Mr. Beres, have you received the PSI

20   and revised PSI and reviewed it?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  Are there any objections?

23              THE DEFENDANT:  No, Your Honor.

24              MR. HOROWITZ:  No, Your Honor.

25              THE COURT:  All right.  The Court makes the
```

1   following findings with respect to the advisory guidelines:

2          The total offense level is 25.  The criminal

3   history category is 1.  The advisory imprisonment range is

4   57 to 60 months.  Probation not authorized.  Supervised

5   release range is 2 to 5 years.  The fine range is $10,000

6   to $100,000.  Restitution to be determined, and there is a

7   mandatory special assessment of $100.  Does the government

8   have a recommendation?

9          MR. EBERT:  Yes, Your Honor.  The government

10  recommends a time at the lower end of the range, 57 months,

11  Your Honor.

12         THE COURT:  Okay.  And is there an agreement for

13  a self-surrender?

14         MR. EBERT:  That is something we need to address.

15  As Your Honor may be aware, there's a related matter to

16  this one concerning a trial set to June 1st.  The

17  government would ask for a report surrender date toward the

18  end of June, perhaps June 30.

19         MR. HOROWITZ:  Judge, on behalf of Mr. Beres, we

20  would ask for a little bit later date.  And the reason is,

21  as paragraph 49 points outs for Mr. Beres, he is divorced

22  from his first wife and they have two children together.

23  His son Ryan lives with him.  Ryan is a senior in high

24  school, about to enter college.  He's been accepted to FSU.

25  He's --

1              THE DEFENDANT:  Miami.

2              MR. HOROWITZ:  -- University of Miami.  And he's

3     currently on the wait list in Washington University in

4     St. Louis.

5              My understanding is, in addition to being

6     athletically gifted, he's academically gifted, and there

7     are scholarships at stake, both academic and athletic.

8              Mr. Beres wanted enough time to make sure that

9     before he serves whatever sentence this court does impose,

10    that his son is situated at college.  So we would ask for a

11    surrender date at some point in August to allow that to

12    occur, late August or right around Labor Day solely for

13    that reason.

14             THE COURT:  What say the government?

15             MR. EBERT:  Your Honor, the government would

16    suggest the June 30th date.

17             THE COURT:  The 27th -- June 30th is three

18    months.

19             THE COURTROOM DEPUTY:  It's a Tuesday.

20             THE COURT:  June 30th is a Tuesday?

21             THE COURTROOM DEPUTY:  Yes.

22             THE COURT:  The son should certainly know what

23    college he's going to attend by June 30th.

24             THE DEFENDANT:  That's correct, Your Honor.

25    However, he has nowhere else to go until he checks into his

1   dorm, wherever that might be, he has nowhere else to go.

2          THE COURT:  I think three months is sufficient.

3   You'll just need to make arrangements.  I assume what, he's

4   18 or 19 years old?

5          THE DEFENDANT:  He's 18, Your Honor.

6          THE COURT:  Mr. Horowitz?

7          MR. HOROWITZ:  Judge, his son Ryan is finishing

8   high school.  Our concern is that with a June surrender

9   date, college starts in August, usually around mid-August,

10  and I'm trying to -- since Mr. Beres doesn't know what

11  school he's going to, I can't give this Court a firm date

12  that he's going to begin to attend college.

13         Our concern is that if Mr. Beres reports to his

14  designated institution at the end of June, his son who's

15  been living with him since 2004 would have no place to go

16  for a period of approximately six weeks and that's what we

17  are trying to avoid.  Clearly, a son would like his father

18  to accompany him when he goes to college.  It's kind of

19  like a right of passage that we've all gone through.

20         But in this case, it's a little different because

21  Mr. Beres, what he wants to do is just take his son and

22  make sure the son has a place to live up until that point

23  because if the Court orders such a surrender date, his son

24  will not have a place to live for about six to eight weeks,

25  and that's what we are trying to avoid, that period from

1    about June 30th --

2            THE COURT:  Where are they currently living?

3            MR. HOROWITZ:  In Aventura, Your Honor.  His son

4    Ryan has been living with Mr. Beres since 2004.

5            THE COURT:  Why can't he remain in the current

6    residence?

7            THE DEFENDANT:  That wouldn't be possible once

8    I'm gone.  Why would I consider leaving him alone?  I don't

9    know that that's even a consideration, Your Honor.

10           MR. HOROWITZ:  I also, Mr. Beres is the one who

11   pays the bills.  His son doesn't pay the bills, the

12   household bills, for about six or seven weeks we are

13   talking about.  I'm trying to narrow down for the Court the

14   date as best I can, and that's my main concern is that he

15   would have nowhere to go.

16           THE COURT:  You know what my problem is?  My

17   problem is I have people come before me with far less means

18   than Mr. Beres who have children that are much younger than

19   18 who have to deal with similar problems when they are

20   ordered incarcerated for a period of time.  And, you know,

21   that's one of the hazards of committing the crime.

22           MR. HOROWITZ:  Absolutely, Judge.

23           THE COURT:  I just think 90 days is reasonable.

24           MR. HOROWITZ:  Judge, in a normal situation, I

25   agree with this Court wholeheartedly.  I have had clients

1    who have had two weeks to surrender and clients who have

2    been remanded.  Thankfully that's not the case here.

3            However, in this case, Mr. Beres had cooperated a

4    year and a half before charges were even brought.  The

5    timing of the charges in this case and why we proceeded by

6    information -- it wasn't an indicted case -- the timing in

7    the information was done not to inconvenience Mr. Beres,

8    not to inconvenience the Court, but to assist the

9    government because the case that Mr. Beres was going to

10   testify in the Deborah Filleck matter was originally

11   scheduled to begin on January 9th, and that was the timing,

12   to have Mr. Beres be charged, his plea entered, and

13   everything lined up for him to testify in the Filleck

14   matter.

15           Due to circumstances beyond Mr. Beres's control,

16   specifically an incident regarding Mrs. Filleck's daughter

17   being crime victim in Oklahoma, the case was continued to

18   March 6th, and the Court set the sentencing accordingly to

19   the end of March.

20           On the eve of trial, Mrs. Filleck switches

21   lawyers, four days before they are supposed to commence

22   jury selection, and once again, Judge Marra continues the

23   trial until June.

24           The timing of the charge in this case, they could

25   have been brought in December, January, February, and if

```
 1    everybody had known that the Filleck matter was going to be
 2    tried in June, the information in this case wouldn't have
 3    been brought until next month to allow Mr. Beres to enter
 4    the plea.
 5            He's been cooperating for almost two years, and
 6    it's just that we find ourself -- today's for sentencing,
 7    and I have moved for a continuance, and I don't want to
 8    reargue that, Judge, and I know the Court has ruled and we
 9    are prepared to proceed today based on the Court's ruling,
10    but we find ourselves in this untenable position where we
11    have an 18-year-old with this less than two month
12    additional time and that's what we are asking for.
13            THE COURT:  Are your parents still alive?
14            THE DEFENDANT:  Yes, Your Honor, my mom is in the
15    courtroom here.  My father passed away in August.
16            THE COURT:  Where does your mom live?
17            THE DEFENDANT:  She lives close to us.
18            THE COURT:  Why can't your son stay with your mom
19    between June 30th and the time he goes off to college?
20            THE DEFENDANT:  She lives in a one-bedroom
21    apartment.  I mean, after all, she's 78 years old now
22    and --
23            THE COURT:  She looks pretty good.
24            THE DEFENDANT:  Yeah, she does.
25            THE DEFENDANT'S MOTHER:  Thank you.
```

1            THE COURT:  You're welcome.

2            THE DEFENDANT:  She does, Your Honor.  And also,

3   Your Honor, the government was aware of these circumstances

4   from the onset.  Mr. Goldberg was aware of this from the

5   very, very, very beginning.  We had discussed this back in,

6   I don't know, several months ago, and I was not aware --

7            THE COURT:  Was there an agreement with the

8   government?

9            THE DEFENDANT:  Well, Mr. Goldberg certainly

10  didn't express --

11           MR. HOROWITZ:  Judge, it's something we

12  discussed.

13           THE COURT:  The reason I ask that is because 99

14  and nie-tenths percent of the time, there's an agreement

15  between the parties.  I honor the agreement.  And if there

16  was such an agreement with Mr. Goldberg, I'll honor it.

17           MR. EBERT:  Your Honor, there was an agreement as

18  to having a surrender date that would occur after the

19  Filleck matter goes to trial.  And the specific time frame

20  that Mr. Goldberg and I discussed based on that

21  understanding is a date for the end of June.  I think that

22  would be sufficient.

23           MR. HOROWITZ:  Judge, I know I had talked, and

24  most respectfully to Mr. Ebert, it's something that I had

25  brought up to Mr. Goldberg, that we didn't believe to be

```
 1   any opposition to, and Mr. Beres's prior counsel Ms. Ratson

 2   or Mr. Wiener, they represented Mr. Beres prior to the

 3   information being filed had discussed that with

 4   Mr. Goldberg as well.  It was something that everybody had

 5   known about.  It was nothing that we were springing on the

 6   government or on the Court on the morning of sentencing.

 7   It was something we had all discussed.  And I thought there

 8   was an agreement on it.

 9              THE COURT:  Yes, sir.

10              MR. EBERT:  I would just, the main issue here for

11   the government is, yes, there is an agreement that there be

12   a report date that would occur after the trial, give

13   sufficient time for any testimony to be provided.  And

14   that's the main factor that is behind the government's

15   position here.  It's just a date after the trial.

16              THE COURT:  I certainly did not intend to belabor

17   the point.  My position is simply to try and maintain some

18   degree of uniformity in how I handle these matters.  I try

19   very hard to insure that there is not unequal treatment,

20   but I'm going to go ahead and take your word pore it, that

21   there was at least a tacet understanding that there would

22   be no objection by Mr. Goldberg to a later surrender, and

23   the last Friday in August is August 28.

24              MR. HOROWITZ:  That would be acceptable, Your

25   Honor.
```

```
 1                THE COURT:  All right.  I'll set a surrender date
 2      for August 28th, 2009, no later than 2:00 p.m. at the
 3      institution designated by the Bureau of Prisons.
 4                THE DEFENDANT:  Thank you, Your Honor.
 5                THE COURT:  You're welcome.
 6                All right.  Mr. Horowitz, do you wish to be heard
 7      with respect to a recommendation?
 8                MR. HOROWITZ:  Judge, regarding the
 9      recommendation for the sentence, pursuant to paragraph 7 of
10      our agreement, we are jointly recommending a sentence
11      within the advisory guideline range, and that is my
12      agreement with the government and I abide by that
13      agreement.
14                THE COURT:  Well, I do have lawyers who
15      occasionally don't abide by those agreements so it's nice
16      to see that you are adhering to the agreement.
17                MR. HOROWITZ:  Some lawyers, after the plea
18      agreements are entered, they never look at them again, and
19      I always try --
20                THE COURT:  I've always known you, Mr. Horowitz,
21      to be an honorable and ethical attorney.
22                Mr. Beres, is there anything you would like to
23      say, sir?
24                THE DEFENDANT:  Yes, I would, Your Honor.  I very
25      much appreciate the opportunity to address the Court this
```

1    morning, Your Honor.  My cooperation began days after my

2    interview with Mr. Goldberg and Inspector Saracito.  I

3    would have done anything that the government asked of me

4    and I have done everything that they have asked of me.

5              I also brought to the inspector's attention other

6    situations that I thought may have been of interest.  For

7    one reason or another, Inspector and the postal service

8    could not take advantage of those situations.

9              Inspector Saracito and myself have a mutual

10   respect for each other and a very good rapport.  He has

11   mentioned to me several times, Your Honor, that he knows I

12   am a different type of person than those involved in

13   previous cases.  And as you know, Your Honor, my

14   cooperation continues even now.

15             I have spent my entire adult life in a

16   professional capacity helping people protect their assets

17   and keep their money safe.  I was licensed with the SEC,

18   the National Association of Security Dealers, and the State

19   of Florida for over 20 years without ever having a

20   complaint or a lawsuit against me.

21             You see, Your Honor, that's what makes it so

22   difficult to live with people actually losing their hard

23   earned money on my watch.  It's been difficult to deal

24   with.  I'm deeply sorry and genuinely remorseful.  I have

25   ruined my own reputation and I have embarrassed my family.

1   I will carry with me forever the physical and emotional

2   scars for what I have done.

3            I wish there was a way for me, Your Honor, to

4   return the investors' money.  Unfortunately, I have been

5   left with no money or assets.

6            Last August, my father passed away.  He was a war

7   hero, a successful businessman, and the center of 50 nieces

8   and nephews.  He was the second youngest of ten children,

9   and I have a loving, supportive, and generous mother and I

10  have two incredible children.

11           I am a single parent to my son, Ryan.  For the

12  past five years.  He is a gifted student and a gifted

13  athlete.  This fall he begin studies in medicine, one of

14  many excellent schools that he chooses including Wash U in

15  St. Louis and the University of Pennsylvania.

16           He's already been accepted to the University of

17  Miami, Florida State, and Tulane.  He is a nice young man,

18  Your Honor.  Ryan is a leader and not a follower.  He has

19  high moral values and is a young man of character and

20  intelligence.  He is mature beyond his years.

21           We have a special bond.  My daughter brook is 16

22  and has many special qualities as well.  She is smart and

23  tough-minded, funny, and beautiful.

24           I live for my children and love them

25  unconditionally.  Your Honor, I'm pleading for your mercy

1   this morning.  I hope that you recognize that I am a good,

2   hard-working family man that made a horrible, horrible

3   mistake.  I hope God blesses our great country and everyone

4   in it.

5              THE COURT:  What sport does your son play?

6              THE DEFENDANT:  Football, Your Honor.

7              THE COURT:  What position?

8              THE DEFENDANT:  Linebacker, and as they call him

9   at this point, he's a tweener.  He may wind up at safety.

10             THE COURT:  How big is he?

11             THE DEFENDANT:  He's about 6-2, 200.

12             THE COURT:  Would be a good-sized safety.

13             THE DEFENDANT:  I'm sorry.

14             THE COURT:  That would be a good-sized safety.

15             THE DEFENDANT:  Yes, it would.  In fact, you can

16   view his senior highlights at YouTube.com and search Ryan

17   Beres.

18             THE COURT:  Thank you, sir.

19             The Court has considered all the statements of

20   all the parties, the presentence report which contains the

21   advisory guidelines as well as those statutory factors set

22   forth in 18 United States Code, Section 3553(a).

23             It is the finding of this Court that the

24   defendant is financially unable to pay a fine.  However,

25   restitution is mandatory.

```
 1              It is the judgment of this Court, that the

 2   defendant, Noel Beres, is hereby committed to the Bureau of

 3   Prisons to be imprisoned for a term of 57 months.  It is

 4   further ordered that pursuant to 18 United States Code,

 5   Section 3664D5, the victim's losses are not yet

 6   ascertainable.  Therefore, the Court shall set a date for

 7   the final determination of the victims' losses not to

 8   exceed 90 days from today's date.

 9              Upon release from imprisonment, the defendant

10   shall be placed on supervised release for a term of three

11   years.  Within 72 hours of release, the defendant is

12   ordered to report in person to the probation office in the

13   district where released.  While on supervised release, the

14   defendant shall not commit any crimes, shall be prohibited

15   from possessing a firearm or other dangerous devices, shall

16   not possess a controlled substance, and shall cooperate in

17   the collection of DNA, and shall comply with the standard

18   conditions of supervised release including the following

19   special conditions:

20              Mental health treatment, substance abuse

21   treatment, financial disclosure requirement, no new debt

22   restriction, employment requirement, employment

23   solicitation restriction, self-employment restriction,

24   related concern restriction, and permissible search, all as

25   noted in part G of the presentence report.
```

1          Finally, the defendant is ordered to pay

2     immediately to the United States a special assessment of

3     $100.

4          So the total sentence imposed is 57 months

5     imprisonment, three years supervised release, and a $100

6     special assessment.  The Court will order the defendant to

7     surrender at the institution designated by the Bureau of

8     Prisons no later than 2:00 p.m. on Friday, August 28, 2009.

9          Now that sentence has been imposed, does the

10    defendant or his counsel object to the Court's finding of

11    fact or to the manner in which sentence was pronounced?

12         MR. HOROWITZ:  No, Your Honor.

13         THE COURT:  Let me advise you, Mr. Beres, you do

14    have the right to appeal the sentence imposed.  Any notice

15    of appeal must be filed within ten days after entry of

16    judgment.

17         If you are unable to pay for the cost of an

18    appeal, you may apply for leave to appeal

19    in~forma~pauperis.

20         Gentlemen, is there anything further?

21         Is there a request for a designation?

22         MR. HOROWITZ:  Yes, Your Honor.  We respectfully

23    request that the Court recommend that Mr. Beres serve his

24    sentence at the federal prison camp in Miami.  I have

25    informed Mr. Beres that it is a recommendation not a court

1   order, that it is up to the Bureau of Prisons to determine

2   based on space availability and security level where he

3   will actually serve his sentence.

4          THE COURT:  The Court will grant that request and

5   make the recommendation accordingly.

6          MR. HOROWITZ:  Judge, one additional

7   recommendation is that the Court recommend that Mr. Beres

8   complete the 500-hour drug program while incarcerated.  And

9   that would go as to paragraph 56, 57 of the presentence

10  report would show that type of a need, page 13.

11         THE COURT:  Yeah, I had 57 highlighted.  What say

12  probation?  Do you agree that there is a need for the

13  500-hour drug abuse treatment?

14         THE PROBATION OFFICER:  Yes, we do, Your Honor.

15         THE COURT:  Then the Court will make that

16  recommendation.

17         MR. HOROWITZ:  With that, nothing further, Your

18  Honor.

19         THE COURT:  All right.  Thank you, Mr. Ebert.

20  Nice to see you, sir.

21         THE COURTROOM DEPUTY:  Judge, we need to set the

22  restitution hearing.

23         THE COURT:  We need to set the restitution

24  hearing.

25         THE COURTROOM DEPUTY:  May 22nd at 10:30 a.m.

1              MR. EBERT:  If I might make a suggestion.  In the

2    event that there is a subsequent filing from the government

3    concerning sentencing after testimony has been completed in

4    the other matter, to the extent possible with the Court's

5    schedule, we might suggest a date where those two issues

6    could be addressed at the same time.

7              MR. HOROWITZ:  We would agree, Your Honor.

8              THE COURT:  The problem is is this has to be done

9    within 90 days.

10             MR. HOROWITZ:  Judge, if I can make a suggestion

11   so maybe we can coral Mr. Goldberg into this court for a

12   change.

13             THE COURT:  He's -- Mr. Goldberg is always here.

14   This is the first time he hasn't been here.

15             MR. HOROWITZ:  Judge, he appeared by telephone

16   for the change of plea.

17             THE COURT:  He was here, but by phone.

18             MR. HOROWITZ:  In spirit.  Maybe we could

19   schedule it somewhere around the Filleck case which would

20   be, I would say, maybe early to mid-June.  I don't know how

21   long that trial is supposed to take.  Maybe Mr. Ebert would

22   know.

23             MR. EBERT:  I would imagine it probably would

24   take upwards of a week.

25             MR. HOROWITZ:  And that would be within the

```
 1   90-day window.

 2          MR. EBERT:  I believe the trial is set to

 3   June 1st.

 4          MR. HOROWITZ:  Maybe we can set it approximately

 5   June 10th, give or take.

 6          MR. EBERT:  That's fine with the government.

 7          THE COURT:  I start that Sanchez trial on the

 8   first Monday when I'm back.

 9          THE COURTROOM DEPUTY:  Judge, both sides have to

10   realize if they don't do it within that 90-day period we

11   are talking the loss of restitution.

12          THE COURT:  Here's the situation.  I'm going to

13   be gone the week of June 8th.  The week of June 15th I got

14   a specially set case involving a couple of employees of

15   Homeland Security who were allegedly involved in drug

16   trafficking.

17          So figure from June 8th on, I'm going to be

18   pretty tied up.  So I really need to do it before the week

19   of June the 8th.

20          THE COURTROOM DEPUTY:  I had it set for May 22nd

21   at 10:30.

22          THE COURT:  May 22nd at 10:30.  I think we better

23   keep that date.

24          Now, obviously if you all agree on something, you

25   know.
```

1           MR. HOROWITZ:  Judge, what we may do is we can

2    either have an agreement or potentially a waiver signed by

3    Mr. Beres as to the 90-day period if need be.  But I know

4    the state of the law on the 90 days is kind of like in

5    flux.  I would have to research whether we would even have

6    the ability to waive the 90 days.

7           THE COURT:  I'm not so sure that you can waive

8    that.

9           MR. HOROWITZ:  That's my concern, Judge.

10          THE COURT:  Okay.

11          MR. HOROWITZ:  So leave it on May 22nd at 10:30.

12          THE COURT:  May 22nd at 10:30.  Tell Mr. Goldberg

13   we asked about him.

14          (Thereupon, the hearing was concluded at

15   9:26 a.m.)

16                               - - -

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3         I hereby certify that the foregoing is an

4   accurate transcription of the proceedings in the

5   above-entitled matter.

6

7

8   5/1/09                 s/ Tammy Nestor
                           Tammy Nestor, RPR
9                          Official Federal Court Reporter
                           299 E. Broward Boulevard, Suite 203
10                          Fort Lauderdale, FL 33301
                           954-769-5496
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25